Judge Tucker.
The bill states, that Green, being indebted to Sadler, on the 7th of March, 1788, executed a deed to him for six negroes, to secure the payment of the debt, and that Sadler executed at the same time a defeasance, whereby he agreed that, on payment of 126/. 11s. (the debt before mentioned,) in three years, the right of Sadler to the slaves should cease. That Green was to keep possession of the slaves, paying interest on his debt, for which Green at different times gave his notes, under the name of hire, for the slaves. That Green being absent from his home for a short time on business, in December, 1789, Sadler took out an attachment against his estate, which was levied on these negroes ; judgment in the attachment suit was obtained against Green, and the slaves sold under an execution issued upon that judgment; and that they were all purchased by Sadler, for 1591. The object of the bill is to set aside the sale, and redeem the negroes.
The defendants admit that Green was indebted to Sadler at the time he executed the bill of sale, which they insist was an absolute conveyance and transfer of the property both at law and in equity. They then proceed to state, by way of defensive allegation, that Green, before suing out the attachment, had absolutely absconded, and was on *110 board a vessel with the negroes, and other effects, six miles from his home, when he was overtaken by the Deputy Sheriff, in a calm, who levied the attachment on the slaves. This fact is proved by the testimony of two witnesses ; one of whom (the Deputy Sheriff) says, that Green, after some conversation, observed that, if there had not been an unlucky calm, he should have been far enough out of reach, and thinks he said he should have been in Carolina. That the bill of sale given by Green for the negroes, was intended only as a security for his debt to Sadler, and not as an absolute conveyance, or even a conditional sale, is, I think, obvious, not only from the papers themselves, but from the admission in the answers, that there was a previous debt due from Green to Sadler, which distinguishes it from the case of Chapman v. Turner,(a) and brings it within those of Ross v. Norvell(b) and Robertson v. Campbell and Wheeler.(c) I consider the original transaction between the parties, therefore, merely as a mortgage ; and I hold that, if a creditor by bond, or other legal right which,he is enabled to prosecute with effect at law, obtains from bis debtor a mortgage by way of security for the same, and then prosecutes a suit at common law, and having obtained a judgment for his debt, levies the execution upon the mortgaged property, which is sold by the Sheriff, and purchased by the creditor, the debtor’s right to redeem is not extinguished by this proceeding at law, but bis equity of redemption continues as fully and completely as before the execution was levied, or the judgment obtained. And this upon principle ; for the creditor having accepted of the security for his debt, is bound by every condition that a Court of Equity might impose upon him ; nor can he by his own act absolve himself from any such equitable obligation. The case of Lord Cranstown v. Johnson,(d) is a much stronger case than the one I have put; and shews that acreditar purchasing property, sold under execution to pay his own debt, may, under circumstances, be considered as holding- *111 the same only as a security for his debt, and the charges he has been put to. But there are several features in this transaction which give to this particular case a very differ-t cut complexion- Green is proved to have absconded fraudulently, with his family and property, among which were all, or a considerable part of these slaves, and had actually embarked on board a vessel, and proceeded, some distance on his way to another State, or some other quarter of this State, where he could conceal himself and his property from ihe very creditor to whom he had pledged it as a security. One of the soundest maxims of equity is, “ that “ he who hath committed iniquity, shall not have equi5‘ ty ;”(a) that is, as is explained by Fonblanjue, b. 1. c. 2. s. i3. note (p), where such person is (as in the present case) plaintiff. Willingham v. Joyce(b) is not so fslrong a case as this ; for here the present plaintiff did all in his power to defraud his creditor. The latter was driven to seek his redress at law : whether the proceedings in the cause were regular or erroneous, cannot be inquir Cil into in a collateral way. The judgment must be, taken tobe right, the sale lawful, and the purchase by the creditor the same as the purchase by any other person. The fraud of Green has utterly deprived him of the aid of a Court of Equity, which ought never to interpose to deprive a fair creditor, as Sadler was, of a legal advantage, gained in a due course of law, in consequence of a most flagrant attempt on the part of the debtor to defraud him. The stalencss of the claim, postponed till after Sadler’s death, and barred at law by the act of limitations, furnishes additional reasons in support of this opinion.
Iam, therefore, of opinion, that the decree be reversed, and the bill dismissed.
Judge Roane.
There is no doubt but that the agreement of March 7th, 1788, taken in connection with the defeasance, and all the circumstances of the case, imported a mortgage, and not an absolute sale of the slaves in *112 question. The general right of a mortgagor to redeem may be waived, however, or the party may come into Court, asserting it under circumstances so unfavourable, that the door of the Court of Equity may be shut against him. The appellee’s conduct, in the case before us, partakes of this latter character, and was clearly fraudulent and iniquitous ; but I am not entirely prepared to say, that on this ground alone we ought to deny relief. There is one circumstance, however, which turns the scale with me, and that is, that it is neither alleged nor proved that the slaves in question were sold for less than their value, and it is also shewn that the surplus of the proceeds was applied to the benefit of the appellee by his consent and direction. I consider this, therefore, as a ratification of the sale ; and as the appellee (taking the sale to have been for full value) is, perhaps, substantially in the same situation as if the negroes had been sold under the mortgage and the surplus paid over to him ; I am of opinion, on these two grounds, (but principally the last,) to reverse the decree and dismiss the bill.
Judge Fleming.
I have not a doubt but the deed oí bill of sale for the negroes, with the defeasance under the hand and seal of Sadler, (though on a separate paper,) was intended merely to secure the debt of 126/. Us. with interest, and ought to be considered, in all respects, to have the operation of a mortgage; and had Green conducted himself with honesty and propriety, there can be no question but he Would have been entitled to his equity of redemption of the mortgaged, negroes, of which he would have been quieted in the possession, on his paying the original debt, with legal interest; but, when we see him fraudulently attempting to defeat not only Sadler, but his other creditors also, of their just claims against him, by endeavouring, clandestinely, to remove, as well the mortgaged negroes, as his other property, out of the reach of the law, and prevented only by the fortuitous circumstance, *113 of a calm, he has, in my conception, forfeited all preten«ion to the aid or countenance of a Court of Equity; and I do not recollect a case where the rule more forcibly apt t i • plies, than m the present, that he who comes mto a Court of Equity to ask relief, ought to shew that his own conduct has been upright, equitable, and pure. I therefore concur in opinion with the other judges, that the decree is erroneous, and ought to be reversed, and tho bill dismiss" cd with costs.

 1 Call. 280.

 1 Wash. 14.

 2 Call, 424.

 3 Ves. jun. 170.

 Francis's Max. 2.

 3 Ves. jun. 168.